**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

UNITED STATES OF AMERICA                )

v.                                                            )        CRIMINAL NO. 02-00210-CB
                                                                      CIVIL ACTION NO. 04-0220-CB

LAMONT SIGLER,                            )

            Defendant/Petitioner.         )

## ORDER

      This matter is before the Court on a motion to vacate, set aside or correct sentence filed

pursuant to 28 U.S.C. § 2255 by Lamont Sigler, a person in federal custody.  In addition, Sigler

has filed a motion for leave to amend.  The government has filed a response to the initial § 2255

motion but not to the motion for leave to amend.  For reasons discussed below, the motion for

leave to amend is granted, but the § 2255 motion, as amended, is denied.

**Facts**

      Petitioner was charged in two counts of a six-count indictment with conspiracy to possess

with intent to distribute more than 50 grams of crack cocaine and with possession of more than 5

grams of crack cocaine with intent to distribute it.  Attorney Donald Partridge was appointed to

represent petitioner, who pled not guilty and proceeded to trial along with codefendant Derrick

Leshune Washington.  Trial commenced on January 6, 2003.

      The government's evidence against petitioner rested on the testimony of its confidential

informant, Darrell Quarles.  Quarles agreed to cooperate with the government after having been

caught in possession of drugs in the spring of 2002.  In March or April 2002, before he became a

confidential informant, Quarles was approached by petitioner's codefendant, Derrick

Washington about cooking cocaine into crack.  Quarles owned an auto body shop in Selma.

Quarles and Washington were acquainted because Washington owned a car stereo shop, and the two would occasionally refer customers to each other.  Quarles knew petitioner because he was an employee of Washington's.  Quarles also knew that petitioner went by the nickname "Tadpole".  On three or four occasions in March or April of 2002, Washington cooked crack for Washington.  According to Quarles, petitioner was present on one of those occasions.

In May and June of 2002, Quarles made several controlled buys from Washington.  Each time Quarles telephoned Washington to make the arrangements.  The drugs were then delivered by Washington or one of his employees in a white Chevrolet Lumina van that was registered to another codefendant, Lamarcus Snow.  On one occasion, Quarles made arrangements with Washington for a delivery, Washington was late and Quarles telephoned Washington to see why he had not brought the package.  Washington told Quarles that "Tadpole" was bringing it.  A while later, according Quarles' testimony, petitioner arrived at the prearranged meeting place in the white Chevrolet Lumina van and handed him a package containing crack cocaine. Washington testified in his own defense.  The key point of his testimony was to blame a former employee, who had disappeared, for any drug-dealing ties between his business and Quarles.[1] Washington confirmed some details of Quarles' testimony against petitioner.  Specifically, Washington testified that petitioner worked for him at his stereo shop and that petitioner went by the nickname "Tadpole".

The jury convicted petitioner of the conspiracy count and acquitted him of the

---

[1]The government had introduced telephone records to confirm dates and times of conversations between Quarles and Washington.

substantive offense.[2]   On April 18, 2003, petitioner was sentenced to a term of imprisonment of 70 months.

Counsel filed a notice of appeal.  On appeal, counsel raised six issues–improper admission of hearsay testimony, improper jury selection process, improper vouching by the government for witnesses, improper admission of evidence of codefendants' guilty pleas, sufficiency of the evidence and improper admission of evidence by a government witness.  The Eleventh Circuit rejected all of these arguments in an unpublished opinion dated April 8, 2004 and issued as mandate on May 11, 2004.

**Procedural Background–Withdrawal/Amendment of Motion**

On April 9, 2004, while the appeal was still pending, petitioner filed the instant motion. Petitioner was apparently unaware that a notice of appeal had been filed.  The government filed a response to the motion on May 3, 2004.  On May 13, 2004, petitioner filed a motion stating that he had been unaware of the appeal, requesting leave to withdraw his § 2255 so that he could refile the motion within the 1-year limitations period, taking into account the appeal.  (Doc. 101.) On July 12, 2004, petitioner filed an amended motion to vacate, set aside, or correct sentence. Petitioner's motion to withdraw or amend his original § 2255 motion, which was filed before the completion of the appeal, is hereby **GRANTED**.  The Court considers the original motion to be moot and will address the issues raised in the amended § 2255 motion.  (Doc. 103.)

**Issues Raised**

Petitioner has raised two issues in his amended motion–both based on alleged ineffective

---

[2]Codefendant Washington was convicted of both the conspiracy offense and a substantive offense

assistance of counsel.  First, petitioner asserts that counsel rendered constitutionally ineffective assistance by failing to request that a jury instruction that a government informant, such as Quarles, cannot be a coconspirator during the time he is working with the government.  Second, petitioner contends that counsel rendered constitutionally ineffective assistance because he failed to challenge Quarles' identification of him and failed to request a jury instruction on "mistaken identity".  Petitioner also claims that counsel was ineffective for failing to raise these issues on appeal.

**Discussion**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted."  Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *Addonizio v. United States*, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1994).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*,

152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors."  *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).  Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel.  *Cross*, 893 F.2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial."  *Id.*  However, "[c]onclusory allegations of ineffective assistance are insufficient" *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel."  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland* 466 U.S. at 686.

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioners' to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers'

5

> performances; we are interested in whether the adversarial process
> at trial ... worked adequately.  Therefore, the cases in which habeas
> petitioners can properly prevail on the ground of ineffective
> assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

Petitioner's first claim of ineffective assistance arises from counsel's failure to request a jury instruction regarding the impossibility of conspiring with a government agent.  Petitioner asserts that trial counsel and appellate counsel were both ineffective in this regard.  It is true that one cannot be convicted of conspiracy if the only other member of the alleged conspiracy is a government agent.  *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965).  The failure to give a requested  *Sears* instruction is reversible error if there is a proper foundation in the evidence for such an instruction.  *United States v. Stickel*, 2006 WL 679317 (11th Cir. March 17, 2006).  Here, no *Sears* instruction was warranted because the jury could not have found a conspiracy that involved only petitioner and Quarles.  Petitioner's connection with Quarles was only through Washington.  Quarles arranged the purchase of cocaine through Washington, and petitioner was the delivery person.  Quarles went to cook cocaine for Washington, and petitioner was present.  Even if the jury erroneously concluded that Quarles was a member of the conspiracy, the only logical way it could found petitioner to be a member of the conspiracy was to find that Washington was also a member.  Consequently, the conviction could not have been predicated on a conspiracy solely between petitioner and a government agent.  Petitioner suffered no prejudice as a result of his counsel's failure to request the instruction or to raise the issue on appeal.

Petitioner's second claim of ineffective assistance is also without merit.  Petitioner contends that counsel should have challenged Quarles' identification of him and should have requested a jury instruction on "mistaken identity".  Counsel's failure to take this course of

action was not unreasonable under the circumstances.  Since Quarles knew petitioner, it was quite unlikely that he would have difficulty identifying him.  Petitioner cannot persuade the Court that no reasonable lawyer would have failed to challenge Quarles' identification testimony at either trial or on appeal.

**Conclusion**

The Court has reviewed the motion in light of the record and has concluded that petition is not entitled to relief on either of the claims raised in his amended § 2255 motion. Accordingly, the motion is **DENIED**.

**DONE** and **ORDERED** this the 15th day of May, 2006.


_s/Charles R. Butler, Jr._
**Senior United States District Judge**

7